12-1563-cr
United States v. Okatan

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of August, two thousand thirteen.

PRESENT: GERARD E. LYNCH,
RAYMOND J. LOHIER, JR.,
SUSAN L. CARNEY,
*Circuit Judges.*

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                              No. 12-1563-cr

TAYFUN OKATAN,

*Defendant - Appellant.*

_____

FOR APPELLANT:            LAWRENCE ELMEN, FitzGerald Morris Baker Firth PC, Glens Falls, New York.

FOR APPELLEE:             RAJIT DOSANJH, Assistant United States Attorney (Edward P. Grogan, Assistant United States Attorney, *on the brief*), *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, New York.

Appeal from the United States District Court for the Northern District of New York (Mae A. D'Agostino, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of conviction is VACATED, and the case is REMANDED for further proceedings.

Defendant Tayfun Okatan appeals from a judgment of conviction entered on April 2, 2012 in the United States District Court for the Northern District of New York (Mae A. D'Agostino, *J.*), following a jury trial. The jury found Okatan guilty of bringing and attempting to bring an alien into the United States in violation of 8 U.S.C. § 1324(a)(2)(B)(iii), attempting to transport an alien within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), and encouraging and inducing an alien to illegally enter the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv). In an opinion today, we vacate Okatan's conviction, and remand for a new trial, because the government violated the Fifth Amendment by using in its case in chief evidence that Okatan asked for an attorney during an interrogation by a border patrol agent prior to his arrest. This order addresses Okatan's remaining arguments on appeal. We assume the parties' familiarity with the underlying facts and procedural history of the case.

[1] Okatan argues that the district court erred in denying his pre-trial motion to dismiss the indictment because the government's deportation of Munir Uysal violated his Sixth Amendment rights to compulsory process and to present a defense and his Fifth Amendment right to due process. "We review [Okatan's] constitutional claims *de novo*,

2

but accept [the] district court's factual findings unless they are clearly erroneous." United States v. Desena, 287 F.3d 170, 176 (2d Cir. 2002). In order to establish a constitutional violation based on the deportation of a witness, the defendant "must at least make some plausible showing of how [the witness's] testimony would have been both material and favorable to his defense." United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982).

The district court reasonably found that Uysal's likely testimony would not have been favorable to Okatan's defense. It relied on statements made by Uysal to border patrol agents before he was deported, which, as the district court concluded, were "inculpatory and not likely to persuade a jury to find in favor of [the] defendant." Evidence credited by the district court established that Uysal would have testified that Okatan agreed to pick Uysal up in his car after Uysal had illegally crossed into the United States, and that Okatan loaned Uysal his cell phone to carry while crossing the border. This testimony would have "directly conflict[ed] with [Okatan's] hypothesis" that he rendered no assistance to Uysal in his illegal crossing, and Okatan "offer[ed] no reason to believe that at trial [Uysal's] testimony would have differed significantly." United States v. Ginsberg, 758 F.2d 823, 831 (2d Cir. 1985). Accordingly, the district court did not err in concluding that Uysal's testimony would not have been favorable to Okatan, and that Uysal's deportation therefore did not effect a violation of Okatan's constitutional rights.

[2] Okatan next argues that the indictment should have been dismissed because his right to due process was violated by the government's failure to preserve five items of physical evidence. To make out a constitutional violation, Okatan must show that the

3

missing evidence "both possess[ed] an exculpatory value that was apparent before the evidence was destroyed, and [was] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 489 (1984). Okatan did not complain in the district court of the loss of two of the five items addressed on appeal, and we therefore review for plain error the district court's failure to dismiss the indictment based on the loss of these two items. See Fed. R. Crim. P. 52(b); United States v. Marcus, 130 S. Ct. 2159, 2164 (2010) ("Rule 52(b) permits an appellate court to recognize a 'plain error that affects substantial rights,' even if the claim of error was 'not brought' to the district court's 'attention.'").

First, Okatan argues that documentation presented to immigration officials at the Lewiston port of entry indicating that Uysal had permission to enter the United States "would tend to negate claims by the Government that Appellant drove from Massachusetts to Toronto, Canada with a nefarious purpose in his mind." The government did not dispute at trial that Okatan at first attempted to bring Uysal into the country legally, that the relevant documentation existed, or that Uysal presented it at the Lewiston port of entry. Indeed, a border patrol officer testified to these very facts. Okatan does not explain how he was prejudiced by his inability to show the documents themselves to the jury. Second, Okatan argues that Uysal's "backpack and its contents would have negated the Government's claim that [Okatan] was carrying items needed by [Uysal], such as clothing and personal items." However, Okatan never questioned the

4

agents who arrested Uysal about the backpack or its contents, and he has not shown that he could not have elicited that information through testimony.

Okatan did complain in the district court of the government's failure to present the remaining three items of evidence he addresses on appeal, and the district court concluded that they were neither material nor exculpatory. We review these findings for clear error. See United States v. Rahman, 189 F.3d 88, 139 (2d Cir. 1999). First, Okatan argues that the government's failure to produce Uysal's luggage and an inventory of its contents forced Okatan "to accept, as true, Officer Sweet's testimony that clothing was in the luggage, when it was not." Okatan's suggestion that the luggage did not contain clothing is made for the first time on appeal and is purely speculative. He points to nothing in the record to undermine the district court's conclusion that production of the luggage would not have helped his defense. Second, Okatan complains of the government's failure to produce "pocket trash" seized from Uysal at the time of his arrest, but he gives no explanation for why the "pocket trash" would have been favorable or material to his defense. Finally, Okatan argues that a purported videotape of Uysal and Okatan at the Lewiston port of entry "would have shown almost no contact between Appellant and Officer Tr[uo]ng," but he gives no explanation as to why that would matter.

In any event, even if these items would have assisted in Okatan's defense, any prejudice he suffered from their absence was mitigated by a missing evidence charge. The district court instructed the jury: "If you find that the government could have produced this evidence . . . and that this evidence would have been material in deciding

5

facts in dispute in this case, then you are permitted, but not required, to infer that this evidence would have been favorable to the defendant." Accordingly, the district court did not err by denying Okatan's motion to dismiss the indictment for failure to produce the five pieces of evidence.

[3] Finally, Okatan argues that the district court abused its discretion when it failed to give a missing witness charge with respect to Uysal. "[W]hen a party has it peculiarly within its power to produce witnesses and fails to do so, the jury may infer that the testimony, if produced, would be unfavorable to that party." United States v. Adeniji, 31 F.3d 58, 65 (2d Cir. 1994) (internal quotation marks omitted). The government argues that Uysal was equally unavailable to both parties at the time of trial, but even if a missing witness charge was appropriate, whether to provide one "is committed to the sound discretion of the trial judge, and will not be disturbed absent an abuse of that discretion," United States v. Nichols, 912 F.2d 598, 601 (2d Cir. 1990) (internal quotation marks omitted). We are particularly "reluctant to reverse where a judge refrains from commenting on the inference to be drawn on the facts before the jury and allows counsel instead to argue the inference." United States v. Mittelstaedt, 31 F.3d 1208, 1215 (2d Cir. 1994) (internal quotation marks omitted). Here, the district court denied Okatan's request for a missing witness instruction but allowed Okatan's counsel to tell the jury in closing that "[t]he executive branch put [Uysal] on the plane and sent him out of here. . . . He can't tell you what happened that day. Mr. Okatan didn't put him on a plane, the government did, and now they want you to guess." The district court did not abuse its

6

discretion by refusing to give a missing witness charge and instead permitting Okatan's attorney to urge the jury to draw a negative inference from Uysal's absence.

We have considered Okatan's remaining arguments and find them to be without merit. Nevertheless, for the reasons set forth in the accompanying opinion, the judgment of conviction on all counts is VACATED, and the case is REMANDED for proceedings consistent with this order and the accompanying opinion.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7